1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

**RUBEN VALDEZ,**

11

Petitioner,

12

v.

13

14

**CONNIE GIPSON, Warden,**

15

Respondent.

16

**Case No. 1:12-cv-01784 AWI MJS (HC)**

**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS**

17

18        Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas

19   corpus under 28 U.S.C. § 2254. Respondent, warden of California State Prison,

20   Corcoran, is substituted as the proper named respondent under Rule 25(d) of the

21   Federal Rules of Civil Procedure. Respondent is represented by William K. Kim of the

22   office of the California Attorney General. The parties declined magistrate judge

23   jurisdiction under 28 U.S.C. § 636(c). (ECF No. 12.)

24   **I.        PROCEDURAL BACKGROUND**

25        Petitioner is in the custody of the California Department of Corrections pursuant to

26   a judgment of the Superior Court of California, County of Tulare. On September 5, 2006,

27   Petitioner plead no contest to carrying a loaded firearm, unlawful firearm activity,

28   resisting an executive officer, and resisting a peace officer, and admitted criminal street

1

1    gang enhancements to the four counts. (Clerk's Tr. at 364-367.) On December 15, 2006,

2    a jury convicted Petitioner of attempted deliberate and premeditated murder, shooting at

3    an occupied vehicle, and various enhancements. (Id.) On February 8, 2007, Petitioner

4    was sentenced to an indeterminate term of forty years to life consecutive to a

5    determinate term of six years and eight months in prison. (Id.)

6         Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

7    District on July 3, 2007. (Lodged Doc. 16.) On December 4, 2007, the appellate court

8    affirmed the conviction. (Answer, Ex. A.) Petitioner filed a petition for rehearing on

9    December 26, 2007, and the court modified its order on January 7, 2008. (Lodged Doc.

10   18, Answer, Ex. A.) The California Supreme Court summarily denied Petitioner's petition

11   for review on March 12, 2008. (Lodged Doc. 19; see also, E.D. Cal. Case No. 1:11-cv-

12   01603-LJO-GSA, ECF No. 25, Ex. 2.)

13        Petitioner next sought collateral review of the petition by way of a petition for writ

14   of habeas corpus filed with the Tulare County Superior Court on June 25, 2008. (ECF

15   No. 37, Lodged Doc. 5.) The petition was denied on June 27, 2008. (Lodged Doc. 6.)

16   Petitioner filed another petition for writ of habeas corpus with the Tulare County Superior

17   Court on August 28, 2009. (Lodged Doc. 7.) The petition was denied on August 31,

18   2009. (Lodged Doc. 8.) Petitioner filed a third petition for writ of habeas corpus with the

19   Tulare County Superior Court on September 29, 2009. (Lodged Doc. 9.) The petition

20   was denied on October 1, 2009. (Lodged Doc. 10.)

21        Petitioner filed a petition for writ of habeas corpus with the Third District Court of

22   Appeal on November 4, 2009. (E.D. Cal. Case No. 1:11-cv-01603-LJO-GSA, ECF No.

23   25, Ex. 7.) The petition was denied without prejudice for filing in an inappropriate court

24   on November 19, 2009. (Id.) Petitioner then filed a petition for writ of habeas corpus with

25   the Fifth District Court of Appeal on December 18, 2009. (Id. at Ex. 8.) The petition was

26   summarily denied on March 19, 2010. (Id.)

27        Petitioner filed a petition for writ of habeas corpus with the California Supreme

28   Court on June 17, 2010. (Lodged Doc. 1.) On June 22, 2011, the California Supreme

Court issued an order to show cause, returnable in the superior court. (Lodged Doc. 2.) On July 27, 2011, the superior court resentenced Petitioner. (E.D. Cal. Case No. 1:11-cv-01603-LJO-GSA, ECF No. 25, at Ex. 10.)

On August 17, 2011, Petitioner appealed the resentencing judgment. (Id. at Ex. 11.) On June 20, 2012, the court affirmed the resentencing judgment. (Lodged Doc. 2.) Petitioner filed a petition for review in the California Supreme Court on July 16, 2012. (Lodged Doc. 3.) The petition for review was denied on August 29, 2012. (Id.)

On November 3, 2011, Petitioner filed habeas petition in the California Supreme Court. (Lodged Doc. 3.) The petition was denied without comment on February 29, 2012. (Lodged Doc. 4.) Petitioner filed another habeas petition in the California Supreme Court on July 20, 2012. (Lodged Doc. 5.) The petition was denied on January 3, 2013. (Lodged Doc. 6.)

Petitioner filed his federal habeas petition on November 1, 2012. (Pet., ECF No. 1.) The petition raised four grounds for relief. (Id.) On January 24, 2013, Petitioner filed an amended petition with three additional claims. (ECF No. 30.) Petitioner asserts the following constitutional violations:

1)    That Petitioner's due process rights were violated by the improper admission of an excessive amount of evidence relating to his gang activity;

2)    That there was insufficient evidence to prove that Petitioner was guilty of the crimes and enhancements of: shooting at an occupied motor vehicle; being a member of a criminal street gang; attempted deliberate and premeditated murder; and infliction of great bodily injury;

3)    That the court committed prejudicial error in failing to read back witness testimony during jury deliberations;

4)    That the court committed prejudicial error in allowing the jury to consider gang activity evidence when determining motive, knowledge, intent, or purpose.

5)    That there was insufficient evidence as to the count of willful and deliberate attempted murder;

1    6)    That there was insufficient evidence as to the enhancement for infliction of

2 great bodily injury; and

3    7, 8)    That the trial court committed error by the introduction of his juvenile

4 adjudication for the purpose of impeachment.

5    Respondent filed an answer to the petition on August 22, 2013. (Answer, ECF No.

6 12.) Petitioner filed a traverse on September, 23, 2013. (Traverse, ECF No. 16.)

7 **II.    STATEMENT OF THE FACTS[1]**

8    On June 17, 2005, Octavio Juarez was visiting a friend, Misty, at a house on G Street in Tulare. When he arrived, Valdez was out front.

9 Shortly after his arrival, Valdez asked Juarez for a ride. Juarez agreed to give Valdez a ride. Juarez climbed into his Honda Accord, started the

10 engine, and turned the wheels to pull away from the curb. At that point, Valdez opened the passenger door and fired multiple gunshots at Juarez.

11 Juarez reacted by accelerating quickly and pulling away.

12    A short distance away from the house on G Street, Juarez crashed into several parked cars at a convenience store. A silver Dodge Neon

13 pulled up behind Juarez's car. The four occupants of the Neon hopped out and ran to Juarez's car, where they removed two backpacks and returned

14 to the Neon.

15    Police found a .22-caliber slug on the floorboard of Juarez's car. The police located the Neon on G Street. Paint on the Neon's bumper

16 indicated it had collided with Juarez's car. At the hospital, Juarez positively identified Valdez as the shooter from a photo lineup.

17

18    On July 9, 2005, an officer conducted a traffic stop. As the officer was calling dispatch with the license plate and location, the occupants of

19 the car, including Valdez, climbed out and began walking away. The officer ordered them to stop, drew his weapon, and ordered Valdez to the

20 ground. Valdez was in possession of a handgun.

21    During the trial, Detective Edward Hinojosa testified as an expert in criminal street gangs. Hinojosa explained that the West Side Tula (WST)

22 is a clique of the Nortenos. The WST and Nortenos in general wear red clothing and identify with the letter "N," the number "14," and the "huelga"

23 bird. The rival of the Norteno gangs are the Surenos, who wear blue clothing and identify with the letter "M" and the number "13."

24    Hinojosa testified that to become a gang member, individuals must commit crimes for the benefit of the gang. Typical criminal activities of the

25 WST include homicide, attempted homicide, witness intimidation, robberies, rapes, burglaries, and narcotics trafficking. Hinojosa provided

26

27 [1] The Fifth District Court of Appeal's summary of the facts in its December 14, 2007 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

28

two specific examples of crimes committed by Nortenos; both involved shooting the victims.

Hinojosa opined that Valdez was a member of the Norteno gang and belonged to the WST clique. Hinojosa arrived at this conclusion based on Valdez's tattoos, gang moniker, and prior contact with law enforcement. Prior contact with law enforcement included admitting on questionnaires that he was a member of the WST and a Norteno and Valdez's various writings and statements while in previous custodial situations.

Hinojosa was of the opinion that Valdez shot Juarez, a suspected Sureno, for the benefit of the Norteno gang.

People v. Valdez, 2007 Cal. App. Unpub. LEXIS 10106, 2-4 (Cal. App. Dec. 14, 2007).

## III. **DISCUSSION**

### A. **Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

### B. **Legal Standard of Review**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1.   Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).  A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

1   have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S.

2   Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

3   Federal law for a state court to decline to apply a specific legal rule that has not been

4   squarely established by this Court."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

5   (2009), quoted by Richter, 131 S. Ct. at 786.

6               2.      Review of State Decisions

7        "Where there has been one reasoned state judgment rejecting a federal claim,

8   later unexplained orders upholding that judgment or rejecting the claim rest on the same

9   grounds."  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

10  "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

11  (9th Cir. 2006).  Determining whether a state court's decision resulted from an

12  unreasonable legal or factual conclusion, "does not require that there be an opinion from

13  the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

14  "Where a state court's decision is unaccompanied by an explanation, the habeas

15  petitioner's burden still must be met by showing there was no reasonable basis for the

16  state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does

17  not require a state court to give reasons before its decision can be deemed to have been

18  'adjudicated on the merits.'").

19       Richter instructs that whether the state court decision is reasoned and explained,

20  or merely a summary denial, the approach to evaluating unreasonableness under §

21  2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

22  or theories supported or, as here, could have supported, the state court's decision; then

23  it must ask whether it is possible fairminded jurists could disagree that those arguments

24  or theories are inconsistent with the holding in a prior decision of this Court."  Id. at 786.

25  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

26  was unreasonable."  Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves

27  authority to issue the writ in cases where there is no possibility fairminded jurists could

28  disagree that the state court's decision conflicts with this Court's precedents." Id.  To put

7

it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

             3.    Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002). Musalin v. Lamarque, 555 F.3d at 834.

**IV.    REVIEW OF PETITION**

   **A.    Claim One: Presentation of Excessive Gang Testimony**

Petitioner claims that the amount of gang testimony presented was excessive and resulted in an unfair trial. (ECF No. 3 at 4, 8-23.)

             1.    State Court Decision

1    Petitioner presented this claim by way of direct appeal to the California Court of

2    Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

3    appellate court and summarily denied in a subsequent petition for review by the

4    California Supreme Court. Because the California Supreme Court's opinion is summary

5    in nature, this Court "looks through" that decision and presumes it adopted the reasoning

6    of the California Court of Appeal, the last state court to have issued a reasoned opinion.

7    See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas

8    review, "look through" presumption that higher court agrees with lower court's reasoning

9    where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d

10   663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court

11   opinion in determining whether state court's rejection of petitioner's claims was contrary

12   to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

13   In denying Petitioner's claim, the California Court of Appeal explained:

14       Valdez contends that the amount of evidence admitted pertaining to
15   his gang- related activities was excessive and an abuse of the trial court's
     discretion. …

16   I. Gang Activity Evidence

17       Valdez acknowledges that gang activity evidence was relevant. His
18   contention is that the evidence of gang activity admitted was excessive
     and an abuse of the trial court's discretion under Evidence Code section
19   352.

20       We review any ruling by a trial court on the admissibility of evidence
     for an abuse of discretion. (People v. Alvarez (1996) 14 Cal.4th 155, 201.)
21   This standard is applicable both to a trial court's determination of the
     relevance of evidence as well as its determination under Evidence Code
22   section 352 whether the evidence's probative value is substantially
     outweighed by its prejudicial effect. (See, e.g., People v. DeJesus (1995)
23   38 Cal.App.4th 1, 32-33.) The abuse of discretion standard applies equally
     when the issue is the admission of gang evidence. (People v. Champion
24   (1995) 9 Cal.4th 879, 922; People v. Sandoval (1992) 4 Cal.4th 155, 175.)

25       Evidence Code section 352 states that the "court in its discretion
     may exclude evidence if its probative value is substantially outweighed by
26   the probability that its admission will (a) necessitate undue consumption of
     time or (b) create substantial danger of undue prejudice." The court's
27   discretion is abused only where there is a clear showing it exceeded the
     bounds of reason. (People v. Olguin (1994) 31 Cal.App.4th 1355, 1369
28   [admission of gang evidence over Evidence Code section 352 objection
     not disturbed on appeal unless decision exceeds bounds of reason].)

9

"[A]dmissible evidence often carries with it a certain amount of prejudice." (Olguin, at p. 1369.)

The evidence of gang affiliation and activity was relevant to establish motive for the underlying offenses and the requisite intent for the gang enhancements appended to the two contested counts. The trial court conducted a thorough Evidence Code section 352 hearing prior to ruling on the admissibility of the gang evidence. As a result of that hearing, the trial court precluded the prosecution from introducing evidence that Valdez previously had been incarcerated in the youth authority on an attempted murder charge. In addition, the trial court found that the gang testimony would not necessitate an undue consumption of time, as it was anticipated to take only two hours of court time. The trial court conceded that the gang evidence had a "prejudicial effect," but ultimately concluded that the probative value of the gang evidence outweighed any prejudicial effect and the evidence was relevant to establish the "continuing course of conduct with the criminal gang."

Having conducted a thorough Evidence Code section 352 hearing, ultimately allowing some gang evidence to be admitted while excluding or sanitizing other similar evidence, we conclude the trial court did not exceed the bounds of reason or abuse its discretion. (People v. Olguin, supra, 31 Cal.App.4th at p. 1369.)

Even were we to assume, arguendo, that it was error to admit all of the gang evidence, we would find any error harmless. The applicable standard of prejudice is that articulated in People v. Watson (1956) 46 Cal.2d 818, 836; that is, whether it is reasonably probable a more favorable result would have been obtained in the absence of the claimed errors. (People v. Champion, supra, 9 Cal.4th at pp. 922-923.) Valdez concedes that some gang evidence had to be admitted; Juarez positively identified Valdez as the shooter; and the jury was instructed with Judicial Council of California Criminal Jury Instructions (2006-2007), CALCRIM No. 1403 [limited purpose of evidence of gang activity]. In light of these facts, it is not reasonably probable a result more favorable to Valdez would have been obtained if less gang evidence had been admitted.

People v. Valdez, 2007 Cal. App. Unpub. LEXIS 10106, 4-7 (Cal. App. Dec. 14, 2007).

2.   Analysis

To the extent that Petitioner contends that an excessive amount of gang evidence was permitted under California state evidentiary law, his claim fails because habeas corpus will not lie to correct errors in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).

With respect to Petitioner's due process claim, the United States Supreme Court has held that habeas corpus relief should be granted where constitutional errors have rendered a trial fundamentally unfair. Williams v. Taylor, 529 U.S. 362, 375, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). No Supreme Court precedent has made clear, however,

1   that admission of irrelevant or overly prejudicial evidence can constitute a due process

2   violation warranting habeas corpus relief. See Holley v. Yarborough, 568 F.3d 1091,

3   1101 (9th Cir. 2009) ("The Supreme Court has made very few rulings regarding the

4   admission of evidence as a violation of due process. Although the Court has been clear

5   that a writ should be issued when constitutional errors have rendered the trial

6   fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or

7   overtly prejudicial evidence constitutes a due process violation sufficient to warrant

8   issuance of the writ." (citation omitted)).

9        Even assuming that improper admission of evidence under some circumstances

10   rises to the level of a due process violation warranting habeas corpus relief under

11   AEDPA, this is not such a case. Petitioner's claim would fail even under Ninth Circuit

12   precedent, pursuant to which an evidentiary ruling renders a trial so fundamentally unfair

13   as to violate due process only if "there are *no* permissible inferences the jury may draw

14   from the evidence." Windham v. Merkle, 163 F.3d 1092, 1102 (9th Cir 1998) (emphasis

15   in original) (quoting Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991)). See

16   also Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005) ("A habeas petitioner bears a

17   heavy burden in showing a due process violation based on an evidentiary decision.").

18   Here, the testimony was relevant to proving the substantive gang participation charge

19   and the gang enhancement on the drug charge.

20        In any event, the admission of the challenged evidence did not deny petitioner a

21   fair trial. After a review of the record, this Court finds that the trial court's admission of

22   the testimony of the gang expert would not have had a "substantial and injurious effect"

23   on the verdict. Brecht, 507 U.S. at 623. See also Penry v. Johnson, 532 U.S. 782, 793-

24   96, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001). First, the trial court gave a limiting

25   instruction regarding the gang evidence and instructed the jury not to consider it as

26   evidence of Petitioner's propensity to commit the charged crimes. (Rep. Tr. at 350;

27   CALCRIM No. 1403.)

28        Furthermore, the state court found significant evidence supported Petitioner's

1  conviction. See 28 U.S.C. § 2254(e)(1) ("Determinations of a factual  issue by a state
2  court shall be presumed to be correct."). Specifically, the victim testified that he had a
3  good view of Petitioner and was able to identify him as the assailant. People v. Valdez,
4  2007 Cal. App. Unpub. LEXIS 10106 at 4-7.

5        In light of strong eyewitness testimony that Petitioner shot at the victim from the
6  passenger side of the victim's car, there is no reasonable probability the verdict would
7  have been different if less gang testimony was presented. The California court's rejection
8  of the admission of prejudicial gang evidence claim was not contrary to nor an
9  unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). It is recommended that
10  Petitioner's first claim for relief be denied.

11        **B.    Claims Two, Five and Six: Insufficient Evidence**

12        Petitioner, in his second, fifth, and sixth claims for relief asserts that there was
13  insufficient evidence to support his convictions for shooting at an occupied motor vehicle,
14  attempted deliberate and premeditated murder, and enhancements for being a member
15  of a criminal street gang and infliction of great bodily injury.

16              1.    Legal Standard

17        The Fourteenth Amendment's Due Process Clause guarantees that a criminal
18  defendant may be convicted only by proof beyond a reasonable doubt of every fact
19  necessary to constitute the charged crime. Jackson v. Virginia, 443 U.S. 307, 315-16, 99
20  S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Under the Jackson standard, "the relevant
21  question is whether, after viewing the evidence in the light most favorable to the
22  prosecution, *any* rational trier of fact could have found the essential elements of the
23  crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original).

24        In applying the Jackson standard, the federal court must refer to the substantive
25  elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16.
26  A federal court sitting in habeas review is "bound to accept a state court's interpretation
27  of state law, except in the highly unusual case in which the interpretation is clearly
28  untenable and amounts to a subterfuge to avoid federal review of a constitutional

1   violation." Butler v. Curry, 528 F.3d 624, 642 (9th Cir. 2008) (quotation omitted).

2

3                   2.      Shooting at an Occupied Motor Vehicle

4                        a.      State Court Decision

5       Petitioner presented this claim by way of direct appeal to the California Court of

6   Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

7   appellate court and summarily denied in a subsequent petition for review by the

8   California Supreme Court. Applying the look through doctrine, (Ylst v. Nunnemaker, 501

9   U.S. at 804-05 & n.3), the California Court of Appeal explained:

10      II. Shooting at an Occupied Vehicle

11          Valdez contends the evidence establishes that he and Juarez were
    in the same vehicle when shots were fired; therefore, the conviction for
12  shooting at an occupied vehicle cannot be sustained. Assuming arguendo
    that Valdez is correct and that a gun fired from within an occupied vehicle
13  cannot support a Penal Code section 246 conviction, the evidence
    supports the conviction in this case.
14
          Valdez claims he cannot be convicted of violating Penal Code
15  section 246 if he and Juarez were inside the same vehicle when the gun
    was fired. Valdez cites People v. Stepney (1981) 120 Cal.App.3d 1016 as
16  supporting this theory. The facts of Valdez's case are more akin to the
    case of People v. Jischke (1996) 51 Cal.App.4th 552, where the defendant
17  was convicted of violating Penal Code section 246 for firing a gun in his
    own apartment. The appellate court upheld the conviction, concluding that
18  when the defendant fired the gun at his apartment floor, that floor was the
    ceiling of the apartment below him. Therefore, the defendant had fired at
19  an occupied dwelling, specifically, the other apartment, even though the
    defendant had no intent to fire into or at that apartment. (Jischke, at p.
20  556.)

21          There were multiple shots fired in Juarez's direction. Only one .22-
    caliber slug was found inside Juarez's car. A reasonable inference is that
22  the other slugs were outside the car because the other shots were fired
    from outside Juarez's car. At most, Valdez leaned down to look into the
23  car, opened the door, and fired a shot toward Juarez, but never entered
    the vehicle. Even if Valdez were in close proximity to or touching Juarez's
24  car, as when he opened the door, that would not preclude a conviction
    under Penal Code section 246 for firing at an occupied vehicle. (See
25  People v. Jischke, supra, 51 Cal.App.4th at p. 556.)

26  People v. Valdez, 2007 Cal. App. Unpub. LEXIS 10106 at 7-9.

27                      b.      Analysis

28      Respondent contends that there was sufficient evidence that Petitioner shot at an

1   unoccupied motor vehicle because the California Court found that there was evidence

2   that the gun was fired from outside the car based on the fact that multiple shots were

3   fired, the victim was able to drive away without Petitioner in the vehicle, and only one

4   shell was found in the car. Based on the evidence, Respondent contends that there was

5   sufficient evidence to allow the jury to reasonably infer that Petitioner shot at the victim

6   from outside the car. Petitioner does nothing more than argue, based on his

7   interpretation of the facts presented, that the shooting occurred within the car.

8          Viewing the evidence in the light most favorable to the prosecution, there is

9   sufficient evidence to show that Petitioner was not in the vehicle at the time of the

10  shooting based on the location of the slugs and the victim's ability to drive away without

11  Petitioner in the vehicle. Under Jackson and AEDPA, the state decision is entitled to

12  double deference on habeas review. Based on the Court's independent review of the

13  trial record, it is apparent that Petitioner's challenge to his conviction for shooting at an

14  occupied motor vehicle is without merit. There was no constitutional error, and Petitioner

15  is not entitled to relief with regard to this claim.

16              3.      Criminal Street Gang Enhancement

17         Petitioner asserts that there was insufficient evidence to support finding him guilty

18  of the gang enhancement.

19                  a.      State Court Decision

20         Petitioner presented this claim in a petition to the California Supreme Court. That

21  Court issued a summary denial. (Lodged Docs. 3-4.) Accordingly, "[u]nder § 2254(d), a

22  habeas court must determine what arguments or theories supported or, as here, could

23  have supported, the state court's decision; then it must ask whether it is possible

24  fairminded jurists could disagree that those arguments or theories are inconsistent with

25  the holding in a prior decision of this Court." Richter, 131 S. Ct. at 786.

26                  b.      Analysis

27         To establish a gang enhancement, the prosecution must prove two elements: (1)

28  that the crime was "committed for the benefit of, at the direction of, or in association with

1   any criminal street gang," and (2) that the defendant had "the specific intent to promote,

2   further, or assist in any criminal conduct by gang members ...." Cal. Penal Code §

3   186.22(b)(1).) "Not every crime committed by gang members is related to a gang."

4   People v. Albillar, 51 Cal.4th 47, 60, 119 Cal. Rptr. 3d 415, 244 P.3d 1062 (2005). Even

5   "when two or more gang members commit a crime together, they may be on a frolic and

6   detour unrelated to the gang." Emery v. Clark, 643 F.3d 1210, 1214 (9th Cir. 2011)

7   (citing Albillar, 244 P.3d at 1072.)

8        The specific intent element of § 186.22(b)(1) does not "require[ ] that the

9   defendant act with the specific intent to promote, further, or assist a gang; the statute

10   requires only the specific intent to promote, further, or assist criminal conduct by gang

11   members." Albillar, 51 Cal.4th at 67. This element "applies to any criminal conduct,

12   without a further requirement that the conduct be apart from the criminal conduct

13   underlying the offense of conviction sought to be enhanced." Id. at 66; see Emery v.

14   Clark, 643 F.3d at 1215 (recognizing that Albillar "definitively interpreted § 186.22(b)(1),"

15   "overruled" the Ninth Circuit's interpretation of the statute, and that federal courts are

16   bound by the California Supreme Court's interpretation).

17        Evidence that a crime would enhance a gang's status or reputation or that it would

18   intimidate rival gangs or potential witnesses within the gang's territory, has been found to

19   be sufficient to support a finding that the crime was "for the benefit of" the gang. See,

20   e.g., People v. Garcia, 153 Cal.App.4th 1499, 1503-06, 64 Cal. Rptr. 3d 104 (2007).

21        At trial, the gang expert testified that Petitioner was a member of the Nortenos, a

22   criminal street gang. The expert based his opinion on Petitioner's tattoos, contact history,

23   and self-admissions. (Rept. Tr. at 219-234.) When provided a hypothetical of the events

24   of the shooting, the detective opined that Petitioner shot Juarez for the benefit of the

25   gang. (Id. at 236.) The detective said the shooting created an "aura of fear within the

26   community and also with their rivals." (Id.) The detective further noted that gang

27   members refer to themselves as soldiers because they feel like they are at war with rival

28   gang members, and that a gang member would feel disrespected if a rival entered the

1  gang's claimed territory. The detective further explained that the shooting would
2  promote, further, or assist other gang members in the future because when the
3  community is fearful of gang members, people are less likely to come forward and
4  provide information to the police. (Rep. Tr. at 236-241, 247-248.)

5      Petitioner contends that insufficient evidence was shown to support the
6  enhancement because the prosecution did not show that offenses were gang related.
7  (Traverse at 35.) Petitioner asserts that there was no evidence that he shot the victim for
8  being in a rival gang and that he never commented about the victim wearing blue shorts
9  (the color of a rival gang). (Id.)

10     Petitioner acknowledges the testimony provided by the gang expert, but contends
11  that it was insufficient to prove the gang enhancement because it was based on
12  unreliable hearsay evidence and speculation. (Traverse at 32.) Specifically, Petitioner
13  asserts that the expert's testimony (that the crime of shooting someone that was
14  suspected to be affiliated with a rival gang would benefit Petitioner's status in the gang
15  because a vicious crime would increase his notoriety and create an aura of fear) was
16  conjecture and not sufficient to support the conviction.  (Traverse at 33-34.)

17     In reviewing the elements of the gang charge under Section 186.22(b) and the
18  evidence underlying the conviction in the light most favorable to the prosecution, the
19  Court finds that there is sufficient evidence to support the conviction. Petitioner had
20  admitted gang membership when he was arrested and he bore tattoos commonly worn
21  by gang members. (Rep. Tr. at 218, 220-23.)

22      Further, the gang expert testified that the crime was committed for the
23  furtherance of the gang. (Rep. Tr. at 236-37.) The expert testified that the act of
24  attacking someone perceived as a rival gang member would cause intimidation and fear
25  in the community and the rival gang. (Id.) The gang expert's testimony provided sufficient
26  evidence to support the conviction. "[T]o prove the elements of the criminal street gang
27  enhancement, the prosecution may ... present expert testimony on criminal street
28  gangs." People v. Hernandez, 33 Cal.4th 1040, 1047-48, 16 Cal. Rptr. 3d 880, 94 P.3d

1   1080 (2004).

2       Under <u>Jackson</u> and AEDPA, the state decision is entitled to double deference on

3   habeas review. Based on review of the trial record, there was sufficient evidence based

4   on the testimony of the victim and the gang expert to deny Petitioner's challenge to

5   whether the crime was committed in furtherance of the criminal street gang. There was

6   no constitutional error, and Petitioner is not entitled to relief with regard to this claim.

7           4.      Attempted Premeditated and Deliberate Murder

8       Petitioner asserts that there was insufficient evidence to support finding him guilty

9   of attempted murder.

10              a.      State Court Decision

11      Petitioner presented this claim in a petition to the California Supreme Court. That

12  Court issued a summary denial. (Lodged Docs. 4-5.) Accordingly, "[u]nder § 2254(d), a

13  habeas court must determine what arguments or theories supported or, as here, could

14  have supported, the state court's decision; then it must ask whether it is possible

15  fairminded jurists could disagree that those arguments or theories are inconsistent with

16  the holding in a prior decision of this Court." <u>Richter</u>, 131 S. Ct. at 786.

17              b.      Analysis

18      Petitioner challenges whether there was sufficient evidence to establish that the

19  attempted murder was deliberate and premeditated. Premeditation can be established in

20  the context of a gang shooting even though the time between the sighting of the victim

21  and the actual shooting is very brief. <u>People v. Sanchez</u>, 26 Cal. 4th 834, 849, 111 Cal.

22  Rptr. 2d 129, 29 P.3d 209 (2001). A "studied hatred enmity, including a preplanned

23  resolve to shoot anyone in a certain neighborhood wearing a certain color is evidence of

24  the most calculated kind of premeditation." <u>Sanchez</u>, 26 Cal. 4th at 849.

25      Evidence, in the light most favorable to the state court judgment, shows that

26  Petitioner: (1) was a member of the Norteno criminal gang; (2) that the gang expert

27  opined that the house where the shooting occurred was in the territory of Petitioner's

28  gang; (3) that the victim was from Southern California and wearing blue shorts on the

1   date of the crime; (4) and that Petitioner walked up to the victim's car, opened the

2   passenger door, and fired several shots at the victim, hitting the victim in the head.

3       This evidence was sufficient for a jury to conclude that Petitioner committed a

4   willful, deliberate, and premeditated attempted murder. Petitioner is asking the Court to

5   draw a different conclusion from that drawn by the jury, but he does so without showing

6   a lack of evidence for deliberate and premeditated attempted murder. Petitioner argues

7   that the shooting was "impulsive" rather than premeditated. (Traverse at 55.) Petitioner's

8   alternative theory does not negate the evidence and reasonable inferences from the

9   evidence of the prosecution's theory that Petitioner planned to shoot the victim based on

10  the fact that victim was possibly a rival gang member intruding in his territory. By

11  ignoring the evidence that supports a deliberate and premeditated attempted murder and

12  describing evidence he feels supports a lesser crime, Petitioner ignores the proper

13  standard of review. Jackson, 443 U.S. at 319.

14      Under the doubly deferential review required by Jackson and AEDPA, there was

15  sufficient evidence to support Petitioner's conviction for deliberate and premeditated

16  attempted murder. There was no constitutional error, and Petitioner is not entitled to

17  relief with regard to this claim.

18              5.    Infliction of Great Bodily Injury Enhancement

19      Petitioner asserts that there was insufficient evidence to support finding him guilty

20  of the enhancement for infliction of great bodily injury.

21                  a.    State Court Decision

22      Petitioner presented this claim in a petition to the California Supreme Court. That

23  Court issued a summary denial. (Lodged Docs. 4-5.) Accordingly, "[u]nder § 2254(d), a

24  habeas court must determine what arguments or theories supported or, as here, could

25  have supported, the state court's decision; then it must ask whether it is possible

26  fairminded jurists could disagree that those arguments or theories are inconsistent with

27  the holding in a prior decision of this Court." Richter, 131 S. Ct. at 786.

28

b.      Analysis

Petitioner challenges whether there was sufficient evidence to establish that he inflicted great bodily injury on the victim. Petitioner asserts that the prosecution did not prove that the victim became comatose due to brain injury or suffered permanent paralysis. Petitioner does acknowledge that the medical records presented show that victim suffered injuries to his jaw, neck, arm, and elbow as a result of the shooting. (Am. Pet. at 46.) At the time of Petitioner's conviction, California defined great bodily injury as "a significant or substantial physical injury." Cal. Penal Code § 12022.7.

Great bodily injury is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury. Id.; People v. Cross (2008) 45 Cal.4th 58, 63, 66 For there to be a significant or substantial physical injury, it is not necessary for "the victim to suffer 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function." People v. Escobar, 3 Cal.4th 740, 750 (1992).

Petitioner misstates the legal standard required to prove great bodily injury. There is no need to show that the injury cause the victim to become comatose or suffer paralysis. The evidence presented that the victim suffered injuries to his jaw, neck, arm, and elbow requiring medical attention. (Rep. Tr. at 120-21.) Evidence viewed in the light most favorable to the prosecution and in light of the deference provided by federal habeas review supports the jury's finding enhancement based on use of a firearm causing great bodily injury.  The state court's denial of this claim was not an objectively unreasonable application of Jackson. Petitioner is not entitled to federal habeas relief with respect to this claim.

**C.      Claim Three: Readback of Testimony During Deliberation**

Petitioner, in his third claim for relief asserts that it was prejudicial to read back only a portion of witness Debora James's testimony during deliberation. Petitioner asserts that by only reading a portion of the witness's testimony, the jury would believe that he followed the victim to the store in a silver vehicle, when he asserts that he did

1    not.

2             1.     State Court Decision

3        Petitioner presented this claim in a petition to the California Supreme Court. That

4  Court issued a summary denial. (Lodged Docs. 1-2.) Accordingly, "[u]nder § 2254(d), a

5  habeas court must determine what arguments or theories supported or, as here, could

6  have supported, the state court's decision; then it must ask whether it is possible

7  fairminded jurists could disagree that those arguments or theories are inconsistent with

8  the holding in a prior decision of this Court." <u>Richter</u>, 131 S. Ct. at 786.

9             2.     Analysis

10       Petitioner's claim does not merit federal habeas relief for three reasons. First,

11 federal habeas relief is limited to addressing violations of federal law. <u>Estelle v. McGuire</u>,

12 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). As such, to the extent

13 Petitioner's claim is based solely on the trial court's alleged misapplication of California

14 law (Cal. Penal Code § 1138), such a claim is not cognizable on federal habeas review.

15       Second, the Court has not found any U.S. Supreme Court precedent, nor do the

16 parties cite any, that squarely addresses whether a criminal defendant has a

17 constitutional right to the manner in which testimony is read back to the jury. In the

18 absence of such Supreme Court precedent, the Court cannot conclude that the state

19 court's decision was contrary to, or involved an unreasonable application of, clearly

20 established Federal law. 28 U.S.C. § 2254(d)(1); <u>Wright v. Van Patten</u>, 552 U.S. 120,

21 126, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) (per curiam); <u>Moses v. Payne</u>, 555 F.3d

22 742, 754 (9th Cir. 2009). In any event, the Ninth Circuit has held that "a trial court has

23 wide latitude in deciding whether to have testimony requested by the jury read back."

24 <u>Riley v. Deeds</u>, 56 F.3d 1117, 1120 (9th Cir. 1995).

25       Third, even assuming that there had been a constitutional violation, any error was

26 harmless. See <u>Brecht</u>, 507 U.S. at 637-638 (habeas relief not warranted unless the error

27 had a "substantial and injurious effect or influence in determining the jury's verdict."").

28 Witness James did not see who shot the victim nor could she identify the people who

1    exited a silver car and removed items from the victim's car after he crashed in front of

2    the convenience store. (Rep. Tr. at 50-68.) Petitioner has not shown that reading only a

3    portion of her testimony caused the jury to construe the evidence in a light harmful to

4    Petitioner.

5         Petitioner fails to demonstrate that the state court rejection of his claim "resulted

6    in a decision that was contrary to, or involved an unreasonable application of, clearly

7    established Federal law, as determined by the Supreme Court of the United States." 28

8    U.S.C. § 2254(d). The claim should be denied.

9         **D.    Claim Four: Use of Gang Evidence to Determine Motive**

10        Petitioner, in his fourth claim for relief, asserts that it was prejudicial to instruct the

11   jury to use gang activity evidence to determine motive, knowledge intent or purpose.

12             1.    State Court Decision

13        Petitioner presented this claim in a petition to the California Supreme Court. That

14   Court issued a summary denial. (Lodged Docs. 1-2.) Accordingly, "[u]nder § 2254(d), a

15   habeas court must determine what arguments or theories supported or, as here, could

16   have supported, the state court's decision; then it must ask whether it is possible

17   fairminded jurists could disagree that those arguments or theories are inconsistent with

18   the holding in a prior decision of this Court." Richter, 131 S. Ct. at 786.

19             2.    Analysis

20        Petitioner contends his right to due process was violated by the trial court's

21   erroneous reading to the jury of CALCRIM instruction No. 1403. Specifically, the reading

22   of CALCRIM No. 1403 instructed the jury that it was allowed to consider gang evidence

23   as motive to commit the crimes charged, in this case, attempted murder and related

24   lesser offenses. Petitioner asserts that the instruction was prejudicial in that it misled the

25   jury to consider the evidence upon issues for which it was not relevant or admissible.

26   (Am. Pet. at 38-39.) Petitioner contends that the only relevance that the evidence had

27   was to paint Petitioner as an evil person of bad character who had a criminal disposition

28   or propensity to commit gang crimes. (Id.)

1

At trial the following instructions were given to the jury:

> You may consider evidence of gang activity only for the limited purpose of deciding whether the defendant acted with the intent, purpose, and knowledge that are required to prove the gang-related crimes and enhancements charged or the defendant had a motive to commit the crimes charged.

> You may also consider this evidence when you evaluate the credibility or believability of a witness and when you consider the facts and information relied on by an expert in reaching his or her opinion. You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crimes.

(Rep. Tr. at 350.)

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in a federal habeas corpus action. See Estelle, 502 U.S. at 71-72. To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Id. at 72. Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed.2d 203 (1977)). Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht, 507 U.S. at 637 (whether the error had a substantial and injurious effect or influence in determining the jury's verdict); see Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Id.

Assuming without deciding that a due process violation occurred, the state Court

1    did not unreasonably determine that the instructional error did not contribute to the

2    verdict and was therefore harmless. To prove attempted murder, the prosecution was

3    required to show that Petitioner had the specific intent to kill and committed a direct but

4    ineffectual act toward accomplishing the intended killing. <u>People v. Lee</u>, 31 Cal. 4th 613,

5    623, 3 Cal. Rptr. 3d 402, 74 P.3d 176 (2003) (citations omitted). Since there is rarely

6    direct evidence of a defendant's intent, it "must usually be derived from all the

7    circumstances of the attempt, including the defendant's actions." <u>People v. Chinchilla</u>, 52

8    Cal. App. 4th 683, 690, 60 Cal. Rptr. 2d 761 (1997).

9         As previously discussed, evidence was presented at trial that Petitioner asked for

10   a ride, opened the passenger side door of victim's car, and shot the victim multiple times

11   in the head and arm. The jury logically relied on these facts, not gang evidence, to find

12   intent to kill the victim. The evidence reasonably supports the inference that Petitioner

13   harbored the specific intent to kill the victim. <u>See</u> <u>People v. Perez</u>, 50 Cal. 4th 222, 230,

14   112 Cal. Rptr. 3d 310, 234 P.3d 557 (2010) (defendant's act of firing a shot into a group

15   of people from a distance of 60 feet showed intent to kill); <u>Chinchilla</u>, 52 Cal. App. 4th at

16   690 (the act of firing toward a victim at close range in a manner that could have inflicted

17   a mortal wound had the bullet been on target is sufficient to support an inference of

18   intent to kill); <u>id.</u> at 691(the act of firing a single bullet in the direction of two people can

19   be sufficient to support convictions on two counts of attempted murder). Based on the

20   considerable evidence of intent to kill in this case, there is no reason to believe that the

21   instructional error had a substantial and injurious effect on Petitioner's trial or the jury's

22   verdict.

23        The Court finds that the California state courts' rejection of Petitioner's claim was

24   neither contrary to, nor involved an unreasonable application of, clearly established

25   federal law, nor was it based on an unreasonable determination of the facts. Petitioner is

26   not entitled to habeas relief.

27        **E.    Claims Seven and Eight: Impeachment with Juvenile Adjudication**

28        Petitioner, in his seventh and eighth claims for relief, asserts that it was prejudicial

1    to allow the introduction of Petitioner's prior juvenile adjudication for the purpose of

2    impeachment.

3                    1.      Factual Background and State Court Decision

4         Prior to trial, the prosecution moved to introduce Petitioner's 1994 juvenile

5    adjudication for attempted murder, for the purpose of impeaching Petitioner should he

6    testify. The court allowed introduction of the juvenile adjudication, but sanitized the

7    reference to the adjudication as "a crime of moral turpitude." (Rep. Tr. at 8-12.)

8         At trial Petitioner took the stand, and the prosecutor impeached Petitioner:

9    Q. In your past you've been convicted of a felony crime of moral turpitude;
     right?
10
     A. What is moral turpitude?
11
     THE COURT: It's a willingness to do evil or to do wrong.
12
     WITNESS: I wouldn't know how to answer that, because I don't know.
13
     [Sidebar held.]
14
     Q. So to ask you once again, have you been convicted of a felony crime of
15   moral turpitude?

16   A. Yes.

17   Q. And you understand now what the judge explained, that that means a
     readiness to do evil.
18
     A. Yes, ma'am.
19
     [¶] . . . [¶]
20
     Q. So it's your testimony here today that you didn't shoot Octavio
21   [Juarez]?

22   A. Yes.

23   Q. And but yet you have been convicted of a crime where you've shown a
     readiness to do other evil; right?
24
     A. Yes, ma'am.
25
     (Rep. Tr. at 315-318.)
26
27        Prior to deliberations, the trial court gave the jury limiting instructions that they

28   were to consider the crime of moral turpitude conviction "only in evaluating the credibility

1   [of Petitioner]," and that "[t]he fact of a conviction does not necessarily impair or destroy

2   a witness's credibility." (Rep. Tr. at 343].)

3       Petitioner presented this claim in a petition to the California Supreme Court. That

4   Court issued a summary denial. (Lodged Docs. 1-2.) Accordingly, "[u]nder § 2254(d), a

5   habeas court must determine what arguments or theories supported or, as here, could

6   have supported, the state court's decision; then it must ask whether it is possible

7   fairminded jurists could disagree that those arguments or theories are inconsistent with

8   the holding in a prior decision of this Court." Richter, 131 S. Ct. at 786.

9              2.      Analysis

10       Petitioner contends his right to due process was violated by the introduction of his

11   1994 juvenile adjudication for attempted murder to  impeach his character.

12       To the extent that Petitioner contends that the juvenile adjudication should have

13   been excluded pursuant to California state evidentiary law, his claim fails because

14   habeas corpus will not lie to correct errors in the interpretation or application of state law.

15   Estelle, 502 U.S. at 67.

16       With respect to Petitioner's due process claim, the United States Supreme Court

17   has held that habeas corpus relief should be granted where constitutional errors have

18   rendered a trial fundamentally unfair. Williams v. Taylor, 529 U.S. 362, 375, 120 S. Ct.

19   1495, 146 L. Ed. 2d 389 (2000). No Supreme Court precedent has made clear, however,

20   that admission of irrelevant or overly prejudicial evidence can constitute a due process

21   violation warranting habeas corpus relief. See Holley v. Yarborough, 568 F.3d 1091,

22   1101 (9th Cir. 2009) ("The Supreme Court has made very few rulings regarding the

23   admission of evidence as a violation of due process. Although the Court has been clear

24   that a writ should be issued when constitutional errors have rendered the trial

25   fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or

26   overtly prejudicial evidence constitutes a due process violation sufficient to warrant

27   issuance of the writ." (citation omitted)).

28       Even assuming that improper admission of evidence under some circumstances

1   rises to the level of a due process violation warranting habeas corpus relief under

2   AEDPA, this is not such a case. Petitioner's claim would fail even under Ninth Circuit

3   precedent, pursuant to which an evidentiary ruling renders a trial so fundamentally unfair

4   as to violate due process only if "there are *no* permissible inferences the jury may draw

5   from the evidence." Windham v. Merkle, 163 F.3d 1092, 1102 (9th Cir 1998) (emphasis

6   in original) (quoting Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991)). See

7   also Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005) ("A habeas petitioner bears a

8   heavy burden in showing a due process violation based on an evidentiary decision.").

9   Here, the testimony was relevant to the jury's determination of Petitioner's credibility,

10  which he put in issue by testifying.

11      The admission of the challenged evidence did not deny Petitioner a fair trial. After

12  a review of the record, this Court finds that the trial court's admission of juvenile

13  conviction would not have had a "substantial and injurious effect" on the verdict. Brecht,

14  507 U.S. at 623. See also Penry v. Johnson, 532 U.S. 782, 793-96, 121 S. Ct. 1910, 150

15  L. Ed. 2d 9 (2001).

16      First, the trial court sanitized the description of the adjudication so that the jury

17  was only aware that the incident was a criminal act involving moral turpitude rather than

18  attempted murder. Further, the court gave the jury limiting instructions on the use of the

19  crime of moral turpitude conviction only for the purpose of evaluating Petitioner's

20  credibility. A jury is presumed to follow its instructions. Weeks v. Angelone, 528 U.S.

21  225, 234, 120 S. Ct. 727, 145 L. Ed. 2d 727 (2000). There is no evidence that the jury

22  used the evidence for an improper purpose, and as previously described there was

23  strong evidence presented by eye witnesses upon which the jury could rely to determine

24  Petitioner's guilt. Petitioner fails to show that the admission of his prior juvenile

25  conviction was either arbitrary or so prejudicial that it rendered the trail fundamentally

26  unfair. Petitioner has not demonstrated that the California court's conclusion was

27  unreasonable. See 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to habeas relief with

28  regard to this claim.

## V.    **RECOMMENDATION**

It is recommended that the petition for a writ of habeas corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the assigned District Judge, under 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   February 9, 2015        /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE